IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
|     **Plaintiff,** | : |
| | : |
| vs. | : CIVIL ACTION NO. 10-00560-CG-B |
| | : |
| The Contents of Bank of America | : |
| Account No. 9163 in the name of | : |
| Compu-Cell, LLC, including and | : |
| to $50,000.00. | : |

**REPORT AND RECOMMENDATION**

    This matter, which was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), is before the Court on Claimant Compu-Cell, LLC's Motion to Transfer Venue to the Southern District of Florida Pursuant to 28 U.S.C. § 1401(a) (Doc. 24). Upon review of the referenced motion, supporting briefs and materials, and Plaintiff's brief in opposition thereto, the undersigned **RECOMMENDS** that Claimant's motion be **denied**.

**I.   Background Facts**

    On October 8, 2010, the Government filed a civil forfeiture complaint (Doc. 6), seeking to seize $50,000 contained in a Bank of America account in the name of Compu-Cell, LLC., pursuant to

two federal statutes[1]. In the Complaint, the Government alleges that in September 2009, agents from the Immigration and Customs Enforcement Agency (ICE) and the Internal Revenue Service (IRS) ("the undercover agents") began investigating the activities of money brokers operating in the country of Colombia, and uncovered what they suspected was a scheme to launder money from the sale of illegal drugs. (Doc. 6 at 20-27). Specifically, the Government alleges that in September 2009, the subjects under investigation arranged with a confidential informant, whom they believed to be a professional money launder to pick up drug proceeds in the form of large amounts of U.S. currency from certain co-conspirators in the United States and in the Dominican Republic, and to deposit the drug proceeds into business accounts and to further launder the drug proceeds as

---

[1] The first statute is the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), codified at 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of any property involved in a transaction or attempted transaction in violation of the anti-money laundering provisions of 18 U.S.C. §§ 1956 and 1957, and any property traceable to such a transaction. The second statute is 21 U.S.C. § 881(a)(6), which subjects to civil forfeiture all money or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of the Controlled Substances Act; all proceeds traceable to such an exchange; and all money used or intended to be used to facilitate any violation of the Controlled Substances Act. The government also states in its complaint that, to the extent that some funds in the same bank account are not directly traceable to the alleged offenses which form the bases for the forfeiture, they are nevertheless considered the same as the directly traceable funds under 18 U.S.C. § 984, and therefore are subject to forfeiture. (Doc. 6 at 2.).

directed by the conspirators by wire transfers of the drug proceeds from a Regions Bank account set up by undercover officers in Mobile, Alabama, into domestic and foreign bank accounts identified by the conspirators. (Id.). The Government alleges that on October 20, 2009, the conspirators had an associate deliver to an undercover agent, who was posing as one of the confidential informant's associates, $275,000 in currency in a parking lot in Rancho, Cuchamongo, California. (Id. at 23-24). The Government further alleges that the money was subsequently deposited into the ICE-controlled Regions Bank account, which was set up in Mobile, Alabama in order to receive the suspected drug proceeds and to wire transfer the money based on instructions received from the Colombian money broker and his co-conspirators. According to the Government, on October 23, 2009, the undercover agents were directed by the alleged conspirators to wire transfer $50,000.00 of the currency to a Bank of America account held by Compu-Cell, LLC (account number XXXXXXXX9163), and pursuant to the instructions, $50,000.00 was subsequently wired to the above-referenced Bank of America account belonging to Compu-Cell, LLC (Id.).

As noted supra, the Government has filed the instant action seeking the forfeiture of $50,000 seized from the above-referenced account, and in response, Compu-Cell, LLC has asserted a claim for the $50,000 at issue.

**II.   Discussion**

Claimant Compu-Cell, LLC ("hereinafter Compu-Cell") seeks the transfer of this action pursuant to 28 U.S.C. § 1404(a), and argues that this case is essentially a South Florida matter, and that the case should be decided by a South Florida jury. In support of its motion, Compu-Cell alleges that the money was seized from its banking account located in Miami, Florida, it is a limited liability corporation that does business and maintains offices in the Southern District of Florida, it does not conduct or solicit business in Alabama, all of the transactions are alleged to have taken place outside of Alabama, Alabama's only connection with the case is the fact that the undercover agents utilized a Regions bank account located in Mobile, and that all of the key evidence, including witnesses and account information, is located in the Southern District of Florida.

The Government asserts that pursuant to 28 U.S.C. § 1355(b)(1)(A), venue in a civil forfeiture action such as this is proper and may be brought in a district in which any of the acts or omissions giving rise to the forfeiture occurred. The Government further alleges that the uncover agents utilized a bank account in Mobile to carry out the wire transfer instructions, including submitting paperwork for a wire request/authorization, and their acts were an integral part of getting the drug money into the financial system for the money

4

laundering process and are acts upon which the forfeiture is based. The Government also argues that as Plaintiff, its choice of forum is entitled to great weight, that the United States has several witnesses, including the case agents and Bank personnel, located in this district, and that to transfer this action to the Southern District of Florida would merely shift the inconvenience of litigating from one party to the another.

28 U.S.C. § 1404(a) provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a). Section 1404(a) vests broad discretion in the district court which must make an individualized, case-by-case determination based on principles of convenience and fairness. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 2244, 101 L.Ed. 2d 22 (1988); LaSalle Bank N.A. v. Mobile Hotel Props., LLC, 274 F. Supp. 2d 1293, 1301 (S.D. Ala. 2003).

Generally, the burden is on the moving party to prove that a case should be transferred. In re Ricoh Corp., 870 F. 2d 570, 573 (11th Cir. 1989) ("[I]n the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient."); Irwin v. Zila, Inc., 168 F. Supp. 2d 1294, 1296 (M.D. Ala. 2001). To prevail, the moving party must show that there is an adequate alternative

5

forum available, that the public and private factors favor transfer, and that the plaintiff can litigate in the alternative forum without undue inconvenience or prejudice. Leon v. Millon Air, Inc., 251 F.3d 1305, 1310-11 (11th Cir. 2001). The public and private factors have been identified as: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)(citation omitted).

The threshold question before the Court is whether this case could originally have been brought in the United States District Court for the Southern District of Florida. Then, the Court must decide whether the convenience of the parties and witnesses, and the interest of justice, would be served by transferring this case to the Southern District of Florida. C.M.B. Foods, Inc. v. Corral of Middle, Georgia, 396 F. Supp. 2d 1283, 1286 (M.D. Ala. 2005); § 1404(a). In this case, there is no question that this action could have been brought in the

6

Southern District of Florida (Miami), where Compu-Cell is located, and where the Bank of America account from which the funds were seized is located. While the Government argues that this district is just as convenient as the Southern District of Florida, there is no contention that this matter could not have been initiated in the Southern District of Florida. Because some of the acts giving rise to this forfeiture action occurred in the Southern District of Florida (Miami, FL) and as a result, this case could have been filed there, the first step of the § 1404(a) analysis is satisfied.

Turning to the second step, the Court must now examine the factors set forth above to determine whether transfer of this action to the Southern District of Florida would be for the convenience of the parties and witnesses and in the interest of justice. Courts have recognized that, aside from the plaintiff's own choice of forum, the most important factor in passing on a motion to transfer under § 1404(a) is the convenience of witnesses. Baker v. RBS Wordplay, Inc., 2010 U.S. Dist. LEXIS 110145 (S.D. Ala. Oct. 15, 2010); See also Merswin v. Williams Cos., 2009 U.S. Dist. LEXIS 130658, at *17 (N.D. Ga. Jan. 5, 2009). When considering this factor, courts place a premium on specific information concerning the identity and location of the affected witnesses and the significance of their potential testimony. Baker, 2010 U.S. Dist. LEXIS 110145, at *16.

In its brief, Compu-Cell asserts that all of the key evidence and witnesses are located in the Southern District of Florida, and that it would be costly if it has to fly its witnesses, including their employees, bankers, customers and shipping company employees to Alabama. Compu-Cell further asserts that while the Government will have to fly some of their agents into Florida, the Government has the burden of proving that the funds are subject to forfeiture; thus, the Government should be required to bear the costs of their travel. The Government counters that just as Compu-Cell has witnesses located in Florida, the Government has several witnesses, including the case agents and Regions Bank personnel, located in Mobile; thus, transferring this case to Florida would merely shift the inconvenience of litigating from one party to another.

The undersigned finds that aside from the general assertions contained in their briefs, the parties have not indicated the number of witnesses who will likely be utilized, have not revealed the identities of any of these potential witnesses, and have not provided any information regarding the nature of their testimony. Such sketchy information is not sufficient to enable this Court to determine whether the convenience of the witnesses factor weighs for or against transfer; thus, the Court finds that it is neutral.

The next factor for consideration is Plaintiff's choice of forum. Typically, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996). This is particularly true "if the forum is in the district in which [Plaintiff] resides." LaSalle Bank, N.A., 274 F. Supp. 2d at 1301. Moreover, courts have recognized that "where a transfer 'merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain.'" Cellularvision Tech. & Telecomm., L.P. v. Alltel Corp., 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007)(citation omitted). Given that Mobile-based case agents worked this case, that they utilized a Mobile-based banking account in order to investigate the alleged money laundering scheme, and that the Government elected to file the forfeiture action in this district, the Government's choice of forum is entitled to substantial weight.

Another factor to consider is the ease of access to the sources of proof and the location of the relevant documents. Compu-Cell asserts that its banking records and information regarding purchases are maintained at its offices in Miami; however, "[c]onsidering the relative ease of transporting and exchanging documents in today's world," see Wamstad v. Haley Constr., Inc., 2009 U.S. Dist. LEXIS 55053, at *8-9 (S. D. Ala.

Jan. 29, 2009), the undersigned finds that the location of documents is not a significant factor in this case. Additionally, the parties have not offered any evidence concerning the availability of process to compel the attendance of unwilling witnesses, so the undersigned finds that the availability of process to compel the attendance of unwilling witnesses is not a significant factor in this case.

Another factor for consideration is the locus of operative facts. In this case, the Government alleges that as part of a money laundering scheme, criminal conspirators delivered drug proceeds to undercover agents in Rancho Cuchamongo, California, that the proceeds were subsequently deposited into a Regions banking account located in Mobile, that based on instructions from the criminal conspirators, undercover agents caused the drug proceeds to be transferred to other foreign and domestic bank accounts, including a $50,000 wire transfer to Compu-Cell's Bank of America account in Miami, Florida. Given that the activities surrounding this alleged money laundering scheme took place in Rancho Cuchamongo, Mobile and Miami, the undersigned finds that this factor is neutral.

Compu-Cell also argues that the Southern District of Florida has a strong interest in having "localized controversies" decided at home, and that the United States Attorney's office in South Florida has a large staff, that

10

possesses the capacity and experience to litigate this forfeiture matter. The undersigned finds that because the activities surrounding this alleged money laundering scheme took place in Rancho Cuchamongo, Mobile and Miami, there is simply no reason to believe that the Southern District of Florida's interest in the adjudication of this matter is any greater than the interest of this District. The undersigned further finds that the instant action is governed by federal law, and that there is no reason to believe that the federal court in Florida would be more familiar with the governing law or could process the action more efficiently than this Court. Thus, these factors do not weigh in favor of transfer.

Finally, Compu-Cell contends that it will be costly to fly their witnesses, including their employees, bankers, customers and shipping company employees to Alabama. Although Compu-Cell has not provided any information regarding the actual number of such witnesses it expects to utilize at trial, the distance each witness will have to travel, or its ability to pay such costs, the undersigned will assume that this factor weighs in favor of Compu-Cell.

Compu-Cell does not wish to proceed in this forum, but it has failed to meet its burden of showing that the proposed transferee venue would promote the interests of convenience and justice. As Plaintiff, the Government's choice of forum is

entitled to considerable weight, and Compu-Cell has not come forward with sufficient other countervailing considerations to overcome that deference. Indeed, the majority of the factors cited by Compu-Cell are neutral at best. That is not enough. See, e.g., United States v. $633,021.67 in U.S. Currency, 842 F. Supp. 528, 535 (N.D. Ga. 1993) ("If transfer merely shifts the inconvenience of litigating in a given forum from one party to the other, or if the balance of factors is only slightly in favor of the movant, a court should deny the motion to transfer.").

**IV. Conclusion**

For the reasons set forth herein, and upon careful consideration of the record, the undersigned **RECOMMENDS** that Compu-Cell's Motion to Transfer be **DENIED.**

The attached sheet contains important information regardingobjections to the report and recommendation of the Magistrate Judge.

DONE this **4th** day of **April, 2012.**

                                                **/s/ Sonja F. Bivins**
                                   **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.  **Objection.**  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[2] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the

---

[2]  Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).

>      objection may be deemed an abandonment of
>      the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within fourteen (14) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72.

3.   **Transcript (applicable where proceedings tape recorded).**  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.